CITY OF OKOLONA *v.* CHICKASAW COUNTY.

(Division B. Nov. 19, 1934.)

[157 So. 690. No. 31424.]

**R. H. Knox,** of Jackson, for appellant.

**Thos. L. Haman** and **H. B. Abernethy,** both of Houston, for appellee.

Briefs of counsel not found.

**Griffith, J.,** delivered the opinion of the court.

On June 3, 1924, the city, at a called meeting of its governing board, passed a resolution notifying the board of supervisors of the county that the municipality would, under chapter 232, Laws 1920, claim its one-half of all road taxes collected therein, and the resolution was duly served on the board of supervisors. Recognition was accorded to this resolution by the board of supervisors, and for all the years thereafter payments were annually made by the county to the municipality out of said road taxes; these payments amounting in the aggregate to about six thousand five hundred dollars. Some time after the adoption of the Code of 1930, the city had an audit made of the years from 1926 to 1931, inclusive, and discovered, as alleged, that the county had failed fully to account to it, and was short for each of said years, except 1931, and in the aggregate for the entire period of about thirteen thousand five hundred dollars. Demand was made on the county for this balance, the demand was refused, and the city sued.

Thereupon the county began to do some investigating, and it was discovered that the record of the called meeting of the city council, at which the resolution above mentioned was passed, failed to show that notice of the meeting was served on two of the councilmen and failed

to show that these two were present; and the county defended the suit as to the taxes collected previous to the Code of 1930 on the ground that no valid resolution had ever been passed by the city; and, as against the taxes collected since the Code, the county sought to off-set the payments made by it to the municipality previous to the Code on the asserted ground that these payments had been illegally made and should be recovered back, and the county went further, and, by counterclaim, demanded judgment against the city for the recovery back of a further amount of about four thousand three hundred dollars.

The purported resolution was invalid. Wilson v. City of Lexington, 153 Miss. 212, 121 So. 859; Kidder v. McClanaham, 126 Miss. 179, 88 So. 508. Consequently the court disallowed any of the amounts demanded by the city for the years previous to the Code of 1930, but sustained the claim of the city for the balance of about one thousand five hundred dollars collected since the Code, which amount is admitted by the county to be correct and to be due unless the county is entitled to its stated offset. The court denied the asserted offset of the county, and denied its demand to recover back the payments made by it to the city for the years before the Code; and both sides have appealed.

The city argues that, although its resolution, passed as before stated, was technically invalid, it was given recognition as valid throughout all the years mentioned without any question, and that the county should not now be permitted to question it; and the city urges also that subsequent statutes, particularly section 6418, Code 1930, are sufficient to save the entire case of the city. Without pursuing all the arguments submitted on this feature of the case and because this entire subject has been so frequently heretofore dealt with by this court, we shall now do no more than to make, in response to the arguments submitted, the following resume:

1. In order that a municipality, under chapter 232, Laws 1920, or any subsequent law up to the time of the adoption of the Code of 1930, could be entitled to one-half the taxes collected by the county for road purposes on property within the municipality, it was necessary as a condition precedent that the municipality (a) pass a valid resolution declaring its desire and purpose to claim the stated one-half, and (b) formally notify the board of supervisors of the passage of that resolution. Such a resolution and notice have no retroactive effect, so that up to the time and before the passage and service of notice of such a resolution no road taxes are due, or can be made to become due, to the municipality by the county.

2. Chapter 129, Laws 1928, approved April 16, 1928, did not and does not operate in any respect whatever to aid a municipality which had not theretofore, and which has not since, passed and served the resolution mentioned in the foregoing paragraph. On the contrary, the effect of chapter 129, Laws 1928, was to limit the right of recovery, by those municipalities which had previously passed and served resolutions, but which had not received their one-half of the road taxes, to such of the funds as had not theretofore been otherwise appropriated or expended by the county.

3. For the years following the passage of chapter 129, Laws 1928, up to the adoption of the Code of 1930, that is to say, from April 16, 1928, to November 1, 1930, the right of recovery by the municipality still remained subject to the requirement, as theretofore, that for those years a resolution and notice were necessary to have been passed and served under chapter 232, Laws 1920, as stated in paragraph 1. If such a resolution was adopted and served before the passage of chapter 129, Laws 1928, a new resolution and notice were not necessary, but it was necessary that it be done at some time

either before or after chapter 129, Laws 1928, and when done it had no retroactive effect, as has already been mentioned.

4. Under section 6418, Code 1930, the only recoveries authorized are those to which the municipality was entitled under previous laws, and to be so entitled the municipality must show its right under each of the three foregoing paragraphs; that is to say, it must have previously validly passed and served the required resolution, and as to the period previous to April 16, 1928, the date of the passage of chapter 129, Laws 1928, the funds out of which recovery is sought must have remained unexpended and unappropriated, but not as to those subsequent to April 16, 1928. And the municipality must make a new application, under said section 6418, whatever it may have previously done by way of application.

5. Since the adoption of the Code of 1930, and for all taxes collected for road purposes since November 1, 1930, no resolution or notice is necessary.

The question whether a county may recover back the payments made, upon order of the board of supervisors, to third persons not members of the board, which the county was not legally bound to pay, although the board, in ordering the payment, was acting within the scope of its authority and for full actual consideration, has not often arisen in this state; and no case is called to our attention in which this court has decided the question exactly as thus stated. It was presented but not decided in Robertson v. Southern Bitulithic Co. et al. (Miss.), 97 So. 482, but, since that time and until the present case, the question seems not to have been again urged upon the court. Perhaps in no department of government have there been in the aggregate greater sums paid out of public funds than by the boards of supervisors of the counties, and there can be no doubt of the fact that a considerable part of this enormous ag-

gregate has been paid on orders and proceedings which were technically defective and consequently illegal. The fact, then, that throughout all the years no decision has been obtained from this court that such payments can be recovered back is highly persuasive that it has been the mature conviction of bench and bar that, in general, no such right of recovery back exists.

Turning to the texts and to the decisions in other states, we find general statements in the texts, as, for instance, in 7 Am. & Eng. Ency. Law (2 Ed.), p. 960, as follows: "A county board has no power to audit and allow accounts on their face not legally chargeable to the county, and if it does so it acts in excess of its jurisdiction, and its action will create no legal liability on the part of the county. In accordance with this rule, it has been held that if an illegal charge has been paid in consequence of an improper allowance, an action lies at the suit of the county to recover back the money paid." A similar statement is made in 15 C. J., p. 662, and an imposing array of authorities is cited in support of the text. We have carefully read and examined all those cases. We find that all of them, with only two or three exceptions, deal with fees or allowances made to officers when there was no statute so authorizing, or else the allowances were in excess of the statutory limitations. The text, 15 C. J., p. 663, proceeds, however, to state that "in the absence of fraud, illegality or mistake, money voluntarily paid on a claim authorized by statute cannot be recovered back, although there may be a question as to the proper performance of the services constituting the claim, or the propriety of the allowance." We have examined the cases cited in support of that statement, and find that they also have reference to fees for services of officers or jailers or official printers. Three of them, Randall v. Lyon County, 20 Nev. 35, 14 P. 583, Board of Com'rs of Macon County v. Board of

Com'rs of Jackson County, 75 N. C. 240, and Vindicator Printing Co. v. State, 68 Ohio St. 362, 67 N. E. 733, put the decision upon the doctrine of voluntary payments, and to the same effect is a feature in People v. Foster, 133 Ill. 496, 23 N. E. 615; two of them, Alameda County v. Evers, 136 Cal. 132, 68 P. 475, and County of Richland v. Miller, 16 S. C. 236, rely upon res adjudicata; and one, Commonwealth v. Scarborough, 148 Ky. 561, 147 S. W. 31, places decision upon the precise ground which reaches the root of the question which is before us here.

In that case the defendant was the health officer of the county, and as such performed certain services for which the county was authorized under the statute to pay him, and for which the county did pay him. But also under the statute he was to perform his duties under the orders and directions of the state board of health, so that, until he had such orders and performed his services in accordance therewith, he had no legal claim against the county. The duties were actually performed by him, but without any order of the state board; and later suit was brought against him to recover back the money paid to him. In denying recovery, the court held that, if the transaction had been wholly beyond any warrant of law, there would have been a different question, but, where the thing done was authorized to be done and to be paid for, but was done without compliance with an incidental requirement of the statute, the court will not compel the repayment of the money and let the public continue to enjoy the benefit of the services rendered.

The only case which we have found which deals with payments entirely disconnected from payments of fees, salaries, and the like is Haralson County v. Golden, 104 Ga. 19, 30 S. E. 380, wherein a contractor was by mistake overpaid for the building of a courthouse. There the court said: "It can hardly be doubted that if an overpayment for public work done for a county be made

to a contractor, as a result of oversight, or of a mistake of fact on the part of the ordinary, it is the right of the county to recover back its money thus improperly disbursed. This is in accord with a plain and simple rule of natural right and justice, which would be applicable to transactions between private individuals; and there is no more reason why a person should be entitled to retain money of the public by mistake paid to him, than he would money in like manner unjustly obtained from a fellow citizen.'' The same thought is expressed in Board of Com'rs of Huntington County v. Heaston, 144 Ind. 583, 41 N. E. 457, 460, 43 N. E. 651, 55 Am. St. Rep. 192, 201: ''If the appellee has received and has the money of the county, under such circumstances that in equity and good conscience he ought not to retain the same, and which ex æquo et bono belongs to the county, an action for its recovery will lie in favor of the latter.'' These announcements are in accord with our own cases, as, for instance, Bank of Belmont v. Judson Lbr. Co., 143 Miss. 86, 90, 108 So. 440, 441, wherein it was said: ''Money paid to another by mistake of fact, although such mistake may have been caused by the payer's, negligence, may be recovered from the person to whom it was paid, in an action for money had and received. . . . The ground on which such recovery is allowed is that one receiving money paid to him by mistake should not be allowed to enrich himself at the expense of the party who paid the money to him by retaining it, but in equity and good conscience should refund it.''

It is therefore seen that the cases allowing recovery reason back to the foundation that recovery of the payment can be had when and because the person who has received it has no right in equity and good conscience to retain it; from which it is to be seen also that the want of equity and good conscience in behalf of the payee is a necessary element to the existence and enforcement

of the rule. When a payment has been made by a county to an object not authorizing by law, or which is entirely beyond the scope of the authorized jurisdiction of the county board, in making the payment, the payee has received money which ex æquo et bono belongs to the county and which he is not entitled to retain. Or recurring to the numerous cases above mentioned, where unlawful fees have been recovered back, when an officer has been paid fees or received allowances when there was no statute so authorizing, or else the allowances were in excess of plain statutory limitations, he has received money to which ex æquo et bono he was not entitled and is not entitled to retain.

On the other hand, where the appropriation has been made to an object authorized by law, and which it was within the lawful jurisdiction of the board to make, and the services or the work or the supplies represented by the payment have been fully rendered or furnished, all in good faith, and in the belief that all necessary procedural steps have been taken, the element of equity and good conscience rests then on the side of the payee, and recovery back cannot be had merely because some procedural defect in the contract or in the minutes or some other like matter has, upon subsequent examination, been found to be insufficient or defective.

This court has firmly held to the law that when, before payment has been made by the board, it has been discovered that there is some defect in the minutes or other proceedings as a consequence of which the claimant has no legally enforceable claim, he cannot recover from the county although he has rendered the services or done the work or furnished the materials and the county retains the benefit thereof. This has resulted in many hard cases, as, for instance, Smith County v. Mangum, 127 Miss. 192, 89 So. 913, and see, also, Amite County v. Mills, 138 Miss. 222, 102 So. 465, 737, in which two of the judges dissented. But this is done in order

to guard the interest of the county in the preservation of the benefits of competitive bidding, that contracts shall be reasonably precise and specific and shall be made in the open and spread in the open upon the minutes. It is enough, however, in thus guarding the interests of the county, to require that a party dealing with the county must see to it that, in all its essential features, his contract with the county has been legally made, and that, if not, he shall not be entitled to sue to recover his pay; and it is not necessary to extend the rule, hard as it is already, to that extreme limit that, when the contract or obligation was one which the county was authorized to make or to incur, and the board and the party have in good faith believed that all steps essential to the validity of the contract or obligation have been taken, and the work has been done, or the supplies delivered, and payment has been made therefor, and all have supposed the matter to have been in good order, then upon subsequent discoveries of technical illegalities to uproot the payment and allow it to be recovered back.

So in this case the allowances made by the board were to an object authorized by law; they were within the scope of the authorized jurisdiction of the board; the municipality was in equity and good conscience entitled to receive them and likewise now to retain them; and it is not sufficient as a ground to recover them back that the resolution of the municipal board, believed during all the time to have been good and sufficient, turns out now, upon closer scrutiny, to have been invalid.

Affirmed on direct and on cross appeal.