**GULF LIFE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Sidney M. FOLSOM, Folsom Construction Co., Randall M. Folsom, Lawanda F. Rigdon, Defendants-Appellees.**

**No. 86-8013.**

United States Court of Appeals, Eleventh Circuit.

Nov. 26, 1986.

H. Holcombe Perry, Jr., Albany, Ga., for plaintiff-appellant.

David N. Rainwater, Cordele, Ga., for defendants-appellees.

Before HILL, Circuit Judge, HENDERSON *, Senior Circuit Judge, and LYNNE **, Senior District Judge.

PER CURIAM:

The facts of this case are set out in the original panel decision certifying one question of law to the Supreme Court of Georgia pursuant to Ga.Code Ann. § 15-2-9 (1985). *Gulf Life Insurance Co. v. Folsom*, 794 F.2d 1487 (11th Cir.1986). In that panel opinion we certified the following question:

> In an action for money had and received, can the plaintiff recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment?

The Georgia Supreme Court rendered its decision, answering that in the situation presented by the certified question a plaintiff may generally recover subject to a weighing of the equities between the parties by the trier of fact. *Gulf Life Insurance Co. v. Folsom*, 256 Ga. 400, 349 S.E.2d 368 (1986). Because the Georgia Supreme Court found that this case involves issues which require resolution by the trier of fact, we must reverse the district court's grant of summary judgment. This case is remanded to the district court for proceedings in accordance with the opinion of the Georgia Supreme Court, a copy of which we have attached for the district court's convenience.

REVERSED and REMANDED.

* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

43691

In the Supreme Court of Georgia

Decided: Oct. 22, 1986

MARSHALL, Chief Justice.

The United States Court of Appeals for the Eleventh Circuit certified the following question to this court pursuant to OCGA § 15-2-9, 794 F.2d 1487. "... *Statement of the facts*. Between March 1974, and March, 1977, four $100,000 insurance policies were issued by the appellant, Gulf Life Insurance Co. (Gulf) on the life of appellee Sidney M. Folsom, the ex-president of appellee Folsom Construction Co. (Folsom). A total of $17,396 in premiums were paid for these policies. Folsom became the owner of these policies and on June 16, 1981, applied to Gulf for the maximum amount available under the policies based upon their cash value. Later in June, 1981, Folsom received a total of $56,530.65 from Gulf representing the cash value of the policies. A year later, on June 15, 1982, Folsom again sought the maximum value of the policies and received $62,425.39 from Gulf.

"At the time that Folsom made its second application for the maximum value of the policies, they actually had no value. The second payment of over $60,000 was the result of a computer mistake. This mistake occurred when the premiums that were due on the policies in March of 1982 were not paid on their due date or within the grace period. Because the premiums were not paid, Gulf's computer automatically checked the cash value of the policies to determine if there was any cash value remaining. When the computer checked the Folsom policies, it found that there was no cash value and therefore recorded a lapse of those policies. Subsequently, the premiums on the policies were paid and the policies were reinstated, but in the course of reinstating the policies, the computer did not pick up the 1981 loans as part of the information relating to these policies. It is

** Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

undisputed that this error stemmed from Gulf's programming system, which had been prepared by one of its subsidiaries. Thus, when Folsom applied for the second maximum loan, the loans made in 1981 were not disclosed by the computer and the computer printed out checks for the loan value as if there had been no pre-existing loans on these policies. It is uncontested that Folsom did not play any role in this error. Furthermore, Gulf had in its possession the file on the policy which contained the correct information, and a clerk checking the file manually would have discovered the 1981 requests.

"In early 1983, agents of Gulf called Randall M. Folsom, the insured's son, suggesting that the coverage be converted to a different type of policy. The premiums for the upcoming year were not yet paid and Folsom had to decide whether or not to keep paying the premiums on the policies. Sidney Folsom, the insured, was no longer the president of the company. Randall Folsom, as the new president of Folsom, asked Gulf's agent to determine the outstanding cash surrender value of the policies. He was told that their value was $3,500. This information was incorrect, because it was based upon the same computer mistake that resulted in the second payment of the maximum loan value of the policies. Randall Folsom decided not to pay the premiums for the next year, but instead sought the cash surrender value of the policies. As a result of the signing of these cash surrender agreements, each policy was immediately cancelled.

"Randall Folsom never received the $3,500, so he contacted one of Gulf's agents. The agent said he did not understand the problem, but he would check on the matter. On September 8, 1983, Folsom received a letter from Gulf stating that the loan value of the policies had been overpaid and that Folsom owed Gulf $45,326.84. In addition, Gulf refused to pay Folsom the $3,500 that represented the mistaken cash surrender value of the policies. After Fol-

som did not return the money, Gulf instituted this action for money had and received in the United States District Court for the Middle District of Georgia. Gulf claimed that it was entitled to the $45,-326.84 that had been mistakenly paid to Folsom. Folsom filed a counterclaim seeking to recover the $3,500 which it alleges Gulf is obligated to pay because of the cash surrender agreements. The district court granted Folsom's motions for summary judgment as to both Gulf's claim for money had and received and Folsom's counterclaim. The district court found that the overpayment was caused solely by Gulf's negligence, and therefore OCGA § 13–1–13 dictated the grant of summary judgment to the defendant.

"OCGA § 13–1–13 provides the following: 'Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property ...' Georgia courts have held that this section applies not only when one pays money with knowledge of all the facts but also when one pays by mistake without a valid reason for failing to ascertain the truth. See e.g., *Atlanta Coach Co. v. Simmons*, 184 Ga. 1 [190 SE 610] (1937); *Barker v. Federated Life Ins. Co.*, 111 Ga.App. 171 [141 SE2d 206] (1965). See also *Bohannon v. Manhattan Life Ins. Co.*, 555 F2d 1205, 1212 (5th Cir.1977).[1] In addition, Georgia courts have placed the burden on the party seeking recovery to prove that the payment was not made voluntarily because at the time of the payment, material facts were not known, or because a valid reason existed for the failure to ascertain the truth. *New York Life Ins. Co. v. Williamson*, 53 Ga.App. 28 [184 SE 755] (1936). Relying on this interpretation of

---

**1.** "In *Bonner v. City of Prichard*, 661 F2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981."

OCGA § 13–1–13, the district court concluded that Gulf could not recover its overpayment to Folsom, because there was no valid reason for Gulf's failure to ascertain the true value of Folsom's policies.

"There is another Code section, however, that sheds doubt upon this conclusion. OCGA § 23–2–32(b) provides that '[r]elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby.' It is clear that this Code section applies to actions for money had and received. See *Barton & Ludwig, Inc. v. Thompson,* 170 Ga.App. 187 [316 SE2d 786] (1984); *J.C. Penney Co. v. West,* 140 Ga.App. 110 [230 SE2d 66] (1976). There appears to be a conflict between OCGA § 23–2–32(b) and OCGA § 13–1–13, and we have been unable to find a Georgia case that resolves this conflict.

"*. . . Question to be Certified.* In an action for money had and received, can the plaintiff recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment?

"The particular phrasing used in this certified question is not intended to restrict the Supreme Court's consideration of the issue in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given. See *Martinez v. Rodriquez,* 394 F2d 156, 159, n. 6 (5th Cir. 1968)." *Held:*

An action for money had and received (formerly known at various times as indebitatus assumpsit, implied assumpsit, and assumpsit), although legal in form, arose from the common-law courts, is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity. *Cantrell v. Henry County,* 250 Ga. 822, 825(1), 301 S.E.2d 870 (1983); *Jasper School District v. Gormley,* 184 Ga. 756, 193 S.E. 248 (1937); *J.C. Penney Co.*

*v. West,* 140 Ga.App. 110(2), 230 S.E.2d 66 (1976); *Hobbiest Finance Corp. v. Spivey,* 135 Ga.App. 353(3), 217 S.E.2d 613 (1975).

Thus, although the action is governed by OCGA § 13–1–13, Georgia courts have construed that Code section and its predecessors—and interpreted the action itself—in conjunction with the equitable principles set forth in the Code, including OCGA § 23–2–32 and its predecessors. E.g., *Orient Ins. Co. v. Dunlap,* 193 Ga. 241, 248(2), 17 S.E.2d 703 (1941); *Whitehurst v. Mason,* 140 Ga. 148, 78 S.E. 938 (1913); *Barton & Ludwig, Inc. v. Thompson,* 170 Ga. App. 187, 316 S.E.2d 786, supra, cert. den.; *DeKalb County etc., Union v. D.L. Claborn, etc.,* 162 Ga.App. 631, 292 S.E.2d 507 (1982); *Dept. of Administrative Serv. v. Pritchett,* 160 Ga.App. 294, 287 S.E.2d 290 (1981); *Sun. Fed. Svgs., etc., Assn. v. Manny,* 156 Ga.App. 807, 808(3), 275 S.E.2d 661 (1980); *J.C. Penney Co. v. West,* 140 Ga. App. 110, 230 S.E.2d 66, supra; *Dept. of Public Health v. Perry,* 123 Ga.App. 816, 182 S.E.2d 493 (1971); *Bill Heard Chevrolet Co. v. Atlantic Discount Co.,* 120 Ga. App. 388, 170 S.E.2d 740 (1969); *Bass v. Cates,* 74 Ga.App. 363, 370, 39 S.E.2d 550 (1946); *Dobbs v. Perlman,* 59 Ga.App. 770, 2 S.E.2d 109 (1939). (The apparent reason for the paucity of cases from this court applying specifically to actions for money had and received is that such an action "is not an equity case within the meaning of the constitutional provision relating to the jurisdiction of this court." *Orient Ins. Co. v. Dunlap,* 193 Ga. 241, supra, p. 246, 17 S.E.2d 703.)

Such a construction is proper under the rule of law that "[t]he plaintiff's right to recover cannot be measured by one equitable statute or section of the Code, since such statute must be construed with reference to other equitable principles of which it forms a part." *Adler v. Leopold Adler Co.,* 205 Ga. 818, 823, 55 S.E.2d 139 (1949). "All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmo-

ny with the existing law and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts. [Cits.]" *Poteat v. Butler*, 231 Ga. 187, 188(1), 200 S.E.2d 741 (1973). We have held that the equitable principle in OCGA § 23-2-29, that "[i]f a party, by reasonable diligence, could have had knowledge of the truth, equity shall not grant relief ...," is not inconsistent or conflicting with the equitable principles in OCGA § 23-2-32: "(a) The negligence of the complaining party, preventing relief in equity, is that want of reasonable prudence, the absence of which would be a violation of legal duty. (b) Relief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby," the latter principles being a mere amplification of the former one, with an exception in subsection (b) of § 23-2-32. *J. Kuniansky, Inc. v. Ware*, 192 Ga. 488(3), 15 S.E.2d 783 (1941).

OCGA § 13-1-13 by its terms applies "where all the facts are known." This has been construed to include constructive, as well as actual, knowledge, under such equitable principles as that in OCGA § 23-2-29, supra, and "[i]gnorance of a fact by both parties shall not justify the interference of equity ..." (OCGA § 23-2-29). E.g., *Atlanta Coach Co. v. Simmons*, 184 Ga. 1, supra, p. 7, 190 S.E. 610; *White v. Rowland*, 67 Ga. 546, 557 (1881); *Arnold & DuBose v. Ga. Railroad, etc., Co.*, 50 Ga. 304, 309 (1873); *Hawkins v. Travelers Ins. Co.*, 162 Ga.App. 231, 235, 290 S.E.2d 348 (1982); *Barker v. Federated Life Ins. Co.*, 111 Ga.App. 171, supra, p. 173, 141 S.E.2d 206; *Bohannon v. Manhattan Life Ins. Co.*, 555 F.2d 1205, supra, p. 1212.

Many, and perhaps most, of the cases decided on the basis of the complaining party's negligence in failing to ascertain the truth, are distinguishable on their facts. E.g., the key case of *Atlanta Coach Co. v. Simmons*, 184 Ga. 1, 190 S.E. 610, supra, involved the payment of filing fees

to the clerk of a court under an erroneous interpretation of statute, there being no question of lack of knowledge of all the facts on the part of the payors. Without attempting a case-by-case analysis of this entire line of cases, suffice it to say that whichever cases have failed to take into consideration the applicable equitable principles such as OCGA § 23-2-32, supra, must be treated as merely physical precedents for their particular holdings, rather than as authority to the contrary of what we are here holding.

Even cases applying the constructive-knowledge standard, however, hold that the issue of what is a valid reason for failing to ascertain the truth, is ordinarily a question for the jury. E.g., *Hill v. Agnew*, 202 Ga. 759, 760(3), 44 S.E.2d 653 (1947); *Jackson v. Jackson*, 202 Ga. 634(2a), 44 S.E.2d 250 (1947); *J. Kuniansky, Inc. v. Ware*, 192 Ga. 488, 15 S.E.2d 783, supra, (1); *Central of Ga. R. Co. v. Gortatowsky*, 123 Ga. 366(6), 51 S.E. 469 (1905); *Werner v. Rawson*, 89 Ga. 619, 15 S.E. 813 (1892); *Barker v. Federated Life Ins. Co.*, 111 Ga.App. 171, 141 S.E.2d 206, supra; *Bohannon v. Manhattan Life Ins. Co.*, 555 F.2d 1205, supra. "Questions of negligence and proximate cause are peculiarly questions for the jury except in clear, plain, palpable and undisputed cases. [Cit.] Only in the rare case where there is an admission of liability or an indisputable fact situation that clearly establishes liability, should summary judgment be granted. *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25) [1976]." *Lozynsky v. Hutchinson*, 159 Ga.App. 715, 285 S.E.2d 70 (1981).

Without considering whether a jury issue exists as to the constructive-knowledge question, we find that initially a jury issue exists as to whether the plaintiff was negligent in relying solely on its computer, considering the facts of the current widespread use of computers for the purpose of keeping business records, and that, although the computer here—though negligently programmed by the plaintiff's subsidiary—may not have been known to be

inaccurate. (We note here the analogy that a person is held not to have knowledge of facts which are "stored" in his memory, but which have been forgotten. *Citizens Bank of Fitzgerald v. Rudisill,* 4 Ga.App. 37, 60 S.E. 818 (1908).)

Another jury issue generally involved in this type of action is the defendant's good faith. "Even where money is paid under a mistake of fact, or in ignorance of facts, it can not be recovered, unless the circumstances are such that the party receiving it ought not, in equity and good conscience, to be allowed to retain it. [Cit.] The expression, 'in equity and good conscience,' as above used, refers only to the acts and intentions of the person receiving the money as affecting the other party to the transaction. If he has acted in good faith and in good conscience with the person paying the money, he is entitled to retain it ..." *Stern v. Howell,* 33 Ga.App. 693(2), 127 S.E. 775 (1925). This constitutes, in effect, another qualification of the rule codified in OCGA § 13-1-13. It has been stated that, where money belongs to the plaintiff, and the defendant has no right to retain it, it is irrelevant that the defendant may have acted at all times in good faith. *Bill Heard Chevrolet Co. v. Atlantic Discount Co.,* 120 Ga.App. 388, supra, p. 389, 170 S.E.2d 740. This seemingly inconsistent principle, if not obiter dictum, may be considered as an alternative way of saying that the equities between the parties must be weighed. Also, that case did involve "artifice, deception, or fraudulent practice." OCGA § 13-1-13. In this connection, although the statement of facts in conjunction with the certified question says that "[i]t is uncontested that Folsom did not play any role in this error," we note that there is evidence in the record here that, at the time he applied for the second series of policy loans, defendant Randall Folsom was President of Folsom Construction Co., knew of the previous loans, had access to information and records about those loans, could have found out where the original policies were located but did not do so, and was accustomed to signing insurance-related documents without reading them. In our opinion, this was sufficient to raise an issue as to the defendant's diligence, if not good faith.

A further jury issue, in the process of weighing the equities, is whether the plaintiff's negligence, if any, was "that want of reasonable prudence, the absence of which would be a violation of legal duty." OCGA § 23-2-32(a). "If the defendants [have] suffered no injury, because [the] money was paid to [them] through a mistake, the [plaintiff has] violated no positive legal duty which [he owes] to [them]." *Dobbs v. Perlman,* 59 Ga.App. 770, supra, p. 774, 2 S.E.2d 109. This principle is codified in § 23-2-32(b): "Relief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." This issue may be stated generally to be whether the "circumstances have so changed that it would be inequitable to require full restitution." *Dept. of Administrative Serv. v. Pritchett,* 160 Ga.App. 294, supra, p. 295, 287 S.E.2d 290. There was evidence here tending to prove that the defendants had intended to cancel the insurance policies even before they were informed (by mistake of the plaintiff) that they were entitled to their cash value (which, in actuality, was zero); that defendant Randall Folsom admitted that the defendants did not change their position in any way because of the circumstances of this case; that the plaintiff had no legal duty to lend the money which was actually paid to the defendants; and that the only harm to the defendants in connection with the transaction was that they had spent the money of the plaintiff which had been mistakenly advanced (which generally does not constitute "prejudice." Anno., 40 A.L.R.2d 999, 1013-1016.).

The defendants argue before this court that the above issues are rendered moot by the alleged accord and satisfaction between the parties subsequent to the receipt by the defendants of the mistaken payment by the plaintiff. As a general rule, whether there is accord and satisfaction is a question for the jury. *All-Georgia Development, Inc. v. Kadis,* 178 Ga.App. 37, 41(3c), 341 S.E.2d 885 (1986). Thus, even though there may have been no dispute as to the parties' understanding or agreement, the issue of

whether this constituted an accord and satisfaction is one which must be resolved by the trier of fact, considering the evidence of mistake and weighing all the equities between the parties.

We answer the certified question as follows: In an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment—subject to a weighing of the equities between the parties by the trier of fact.

*Certified question answered.*

All the Justices concur, except HUNT, J., who concurs in part and dissents in part.

## ON MOTION FOR RECONSIDERATION

HUNT, Justice, concurring in part, dissenting in part.

I disagree with that part of the majority's response to the certified question presented which subjects the plaintiff's right to recover to a weighing of the equities between the parties by the trier of fact. In an action for money had and received there are no equities to be weighed unless the other party has been prejudiced—a factor specifically excluded in the question before us. The fact that the plaintiff has paid the defendant because of a mistake caused by the plaintiff's lack of diligence or his negligence simply does not affect the plaintiff's right to recover. Indeed, I can think of no set of circumstances underlying an action for money had and received based on a payment mistakenly made where the payment was not made as a result of the plaintiff's lack of diligence or negligence. A weighing of equities comes into play only where the defendant has been prejudiced and in that event the plaintiff's right to recover is based on whether the defendant "in equity and good conscience" ought to be allowed to retain the money. *Dobbs v. Perlman*, 59 Ga.App. 770, 774, 2 S.E.2d 109 (1939); see *International Indem. Co. v. Bakco, Inc.*, 172 Ga. App. 28, 32(2), 322 S.E.2d 78 (1984). However, the question certified to us provides that "the other party would not be prejudiced by refunding the payment," and thus there is no question of plaintiff's right to recover. To permit the defendant, under these circumstances, to retain the payment would amount to unjust enrichment.

I further disagree that OCGA § 13–1–13, relating to voluntary payments, has any bearing on the question presented. That statute applies only to payments made through ignorance of the law or where all the facts are known, and it is uncontroverted here that the plaintiff was not aware of all the facts at the time payment was made to the defendant. The constructive knowledge element that the majority reads into OCGA § 13–1–13 is not authorized by the cases cited as support, each one of which turns on an issue of payment made with knowledge of all the facts or in ignorance of the law. Nor is the doctrine of accord and satisfaction an issue in this case, which involves a payment made by mistake rather than one made in settlement of a bona fide dispute or controversy between the parties. See *Nauman v. McCoy*, 84 Ga.App. 131(2a), 65 S.E.2d 853 (1951).

There is no authority for subjecting the plaintiff's right to recover to a weighing of equities under the question presented, and in my opinion it must be answered unequivocally in the affirmative.